The first case we're going to hear today is number 23-1029, United States v. Damien Cortez. At this time, would counsel for Appellant Cortez please come up and introduce herself on the record to begin? Good morning, Your Honors. May it please the Court, my name is Dara Silva, and I'm here on behalf of the defendant Appellate Mr. Cortez. Could you pull this closer? Pull that closer. Thank you. Thank you. May I proceed, Your Honors? Can you speak up a bit more? Yes, ma'am. I will try to pull the mic closer as well. Thank you. Your Honors, the court below denied a motion to suppress Anne for a Franks hearing on the basis of factual findings that we submit were clearly erroneous. The warrant at issue here was obtained at the literal end of a lengthy investigation into an NOB gang-related RICO conspiracy. It was not even executed until the day after arrest warrants were sought against Mr. Cortez and 15 other people. And it was supported with an affidavit by Boston Police Detective Brian Ball that 1. contained false statements bearing on the probable cause determination for which the court should have ordered a Franks hearing, 2. failed to establish probable cause as to both the commission and the nexus elements of the case, and 3. precluded we submit application of the good faith exception under Leon. I know that my time is limited, so with the court's permission, I will focus on the argument pertaining to the Franks issue and then the nexus issue if there is time remaining. In the lower court, Mr. Cortez requested a Franks hearing on two statements that purported to connect him with criminal conduct involving NOB members or associates. First, at paragraph 12 of his affidavit, Detective Ball asserted that, quote, based on a review of video footage recovered by investigators, Cortez set fire to a silver Honda Accord. And that's at Joint Appendix pages 52 to 53. Mr. Cortez argued that it was impossible to identify the person who set fire. Did the district court find that the identification was based on the clothing that was worn by the person running away? And that that, therefore, meant that the statement was not false? The court did make that finding, Your Honor. Okay. Why is that clearly erroneous? Because that fact was nowhere within the affidavit of Detective Ball. That doesn't make the statement false. In fact, that evidence was later submitted. In fact, didn't defense counsel provide some of that information? Defense counsel in his affidavit in support of the Franks motion, which was required as a matter of procedure, stated that the AUSA in charge of the case informed him, two years after the warrant was submitted, that the identification was apparently made based on clothing. And the court did rely on that fact. We've cited a case from the Second Circuit, United States v. McMurtry. It's a 2013 case. The Seventh Circuit found that looking to evidence outside of the affidavit, or even information outside of the affidavit, when the defendant does not have an opportunity to challenge that through full cross-examination at a Franks hearing, violates the Fourth Amendment. And McMurtry was- Counsel, can I ask you just to back up to the earlier part of the analysis as I understand it, which is why is the lawyer's statement that in the lawyer's view, identification is not possible from the video, why is that enough to make a substantial showing that Detective Ball was being intentionally or recklessly misleading? People can obviously make identifications based on, you know, for different reasons. So why is that bare statement that the lawyer thought the video was unclear enough for the substantial showing standard? I think in this case, Your Honor, where the statement was so bald, based on a review of video footage, Cortez set fire to a car. It suggests clearly that Mr. Cortez was seen doing that. There is no indication that the identification was based on something other than watching the video and knowing that was Mr. Cortez based on his face, and that was the clear inference of the statement. There's nothing about his face in the statement that Detective Ball made. He just said an identification was made. An identification can be made based on lots of bases. One is face. One is clothing. You know, there's lots of ways that somebody can be identified. So, again, just because the lawyer disagrees that the video is clear, is that really enough, just a lawyer's disagreement with looking at a video? Your Honor, I think it is, and, in fact, there's a case out of the District of Nevada that says exactly that. When a statement is made affirmatively stating that a video is enough to identify a defendant, in the District of Nevada, the lawyer filed an affidavit saying that the video quality was insufficient to make that finding, and the court granted a Franks hearing on the matter. And in the course of that Franks hearing, the court determined, in fact, the video was not sufficient. Here, clearly that statement needed some supplementation. The AUSA offered that factual supplementation two years after the fact, and the District Court, in turn, relied on it in denying the Franks hearing. And under these circumstances, we would suggest that the affidavit was enough to raise questions as to whether that statement was true or false. In that case that you're referencing, Counsel, my understanding is a District Court may always hold a Franks hearing if it wants to, so does that case actually stand for the proposition that the statement in the affidavit about the video was that a lawyer disagreeing meets the substantial showing standard? Does it stand for that rule? It does not, Your Honor, and I didn't mean to suggest that it was. It's merely an instance in which a court found that a bald statement that an identification was made based on a video, coupled with an affidavit from Counsel that they are unable to identify their own client on the video, certainly raises a potential question, and then when the court had to go outside of that affidavit in the course of denying the request for the hearing under McMurtry, we suggest that that actually goes beyond Franks and becomes a violation of the rights protected by Franks. If the court wanted to find that fact in order to deny the motion, the proper process would have been to allow for an evidentiary hearing at which the government could present evidence and not merely an out-of-court statement to that effect, and the defendant could fully cross-examine it. The government says you can't have it both ways. You can't, in defense counsel's affidavit, provide the information that the identification was based on his clothing, whether you could see his face or not, and that you are now trying to walk away from that and the law doesn't permit you to do that. Could you address that argument? Yes, Your Honor. Defense counsel, in an appropriate point of candor, put in his affidavit what the assistant U.S. attorney represented to him in the course of their obligation to meet and confer. Respectfully, Your Honor, it's rather difficult to contest such a blanket statement without hearing what about the clothing allowed the government or law enforcement to identify him, and none of that was in the affidavit. In fact, there was no qualification in the affidavit about how law enforcement was able to identify Mr. Cortez. Isn't it pretty self-evident? I think it would depend. Does your argument depend on showing that the government witness statement was false? Yes, Your Honor. It's false in the frank sense, that it was not accurate, it was not true. And the fact that a man who is familiar with his client and an officer of the court cannot identify his client on the basis of that video, we would submit that it says nothing about his clothing. Correct, Your Honor, nor does the affidavit in support of the warrant. Can I turn you to the nexus issue briefly? In determining whether the affidavit here sets out whether there's probable cause to believe that the evidence sought in the search is to be found at the Attleboro apartment, it sets out a fact that an NLB member lets Mr. Cortez stay there, and then some corroborating information about Cortez going in and out of the house, etc. So I'm wondering if that's enough to meet the nexus standard here, and then more specifically, does it matter whether the affidavit states that it was Cortez's residence, and you seem to contest that, and I'm just wondering whether that matters. So to answer the last question first, it does matter, Your Honor. In fact, when the affidavit in support of the warrant explained the basis for the evidence sought, it was all directly related to what people keep at their residences and in their residences. So that residence finding was critical to the probable cause determination. The information in the affidavit might have been sufficient in a different case. It was problematic here, because one month earlier, Detective Ball swore under oath that Mr. Cortez lived somewhere else, at a place in Randolph, and that assertion... And then that information was supplemented with the information from the investigation, which showed that the owner of the apartment did not actually live in Randolph. He did not actually live there, and Cortez was seen going to the apartment by law enforcement on a number of occasions. Correct? Your Honor, I see I'm out of time. May I respond? Thank you. There were two problems with those representations. One is the fact that Detective Ball had GPS data that precisely located Mr. Cortez with regard to that apartment. He didn't reference it. And the court has held in Fusillo, a case that we cited in our brief, that when the government has readily accessible information that bears on the probable cause determination, it's a material omission to not include it. I think the court can infer... Excuse me. When the government observes him going into the apartment on a number of occasions, you're saying that it's a material omission? I'm saying that the government, under those circumstances, is also required to put in GPS information? It depends on the timing and the facts. And in this case, this was a three-week period of time. And the government said they saw him go into the apartment once in that two-week period of time, and that is not enough for any reasonable person to think the person probably lives there. Paragraph 17 of the affidavit mentions GPS data and also phone metadata. So I'm confused about why you say there is no evidence of GPS data. The evidence that was cited by Detective Ball, the GPS and the phone metadata all came from Mr. Cortez's phone, which had been searched in the three weeks prior to the affidavit at issue here. What Detective Ball did was say that the data showed the phone was located regularly at the apartment, but he didn't say when, in time. And that, coupled with the fact that he swore under oath not four weeks prior that Mr. Cortez lived in Randolph based on whole camera positioned outside of that home for at least a year, we submit that requires additional information. All right. And I want to circle back to your first answer to me, which is that in another case, this might establish nexus. But in this case, it didn't because of that prior affidavit. If I don't agree with you on that point, does this establish nexus? Is that the only reason why you think this case is different?  I have not found a case like this one where there was a diametrically opposed statement within a month of each other by the same affidavit without any explanation and without resort to readily available evidence that would have answered the question. Can I ask you, you really do focus very heavily in your briefing on the phrase resided at our residence, and obviously that is a big part of your argument, but the affidavit also uses the phrase staying at. Is there a difference in your view, a legal difference, whether your client was in Detective Ball's view staying there for a few weeks versus residing there? Do you see a legal difference in the use of those two words? Yes, Your Honor, there certainly could be. In this case, you're right, Detective Ball says that his information was he was allowed to stay there. However, his assertion is there's probable cause that he resides there, and the support for the evidence sought for that nexus requirement is based on what people keep in their residences and not in places where they go, even where they regularly go or stay. Thank you.  Mr. Monte Carlo, and may it please the Court, Mark Quinlivan on behalf of the United States. Let me begin with the nexus issue, because there were two, as the Court is aware, there were two search warrants in this case, the May affidavit and the June affidavit. And it's entirely unremarkable that in the course of an investigation, investigators develop new information that informs and updates what they may have learned. And in the June affidavit, Detective Ball set out in detail what had happened and why there was probable cause to believe that the defendant was staying or residing at the Attleboro apartment. Now, we start with the fact that the May affidavit was for the two cell phones found in the abandoned Chevrolet Malibu. From one of those cell phones, they get the GPS data indicating that the defendant was staying at the Attleboro apartment. And pictures on that phone, the metadata indicated that they were taken from inside that apartment. The picture showed a slanted roof, which was consistent with the third floor apartment. He attached a photo of the front door of that apartment, which says 3 Dupina. And it also sets out that the investigators had learned that a different NOB member, Anthony Dupina, was allowed in the apartment. And he was allowing the defendant to stay at that location because he was residing with his girlfriend in Rhode Island. And indeed, he noted that they had had a contact with Mr. Dupina, and he had confirmed that he was staying in Rhode Island. Then on top of that, you have the physical surveillance indicating that the defendant was regularly seen at the Attleboro apartment, that his car was parked there, and that that included at least once in the week prior to the June affidavit. And to the extent... I think the affidavit says that he was, it references once that he was seen within the last two weeks, and then with respect to the car, it says once within the past week. That's correct, Judge Lynch. I don't, Judge Rickleman, because I think that it might be critical to the particularity of what's being searched for, because that's the part of the affidavit where Detective Ball set out, for example, that at residences, people commonly are found these kinds of things. So if the challenge to the search warrant affidavit was to the particularity requirement, then I would concede that a residence versus staying at would be a material difference. I don't think it's material here where the challenge, putting aside the overall challenge to the warrant, is to the nexus requirement. Why? Because I think that if the defendant is merely staying there, and the affidavit sets out probable cause that he is in fact using that location, and it sets out the list of crimes and what they're looking for, I think that that satisfies that evidence that certain things will be found at that location. It may not be some of the specific things set forth in the affidavit, again going to the particularity requirement, but I think that's different from the nexus requirement. At the end of the day, I don't think it matters here, because I think even if you assume that this had to be the defendant's residence, I think it was satisfied in this case. And just to close one further loop, the June affidavit wasn't silent about the Randolph location. It stated that that was the defendant's parents' home. And it's entirely understandable, it's a reasonable inference that the district court could have made, that to the extent the district court was even looking back at that affidavit, that poll camera data would show that the defendant was at that location, if that's his parents' location. So I don't think that there's anything to the extent you're even going beyond the four corners of the June affidavit and looking back to the May affidavit that calls any of those representations into question. I guess I'm a little confused by the beginning of your answer to Judge Rickleman, because when I look at the search warrant, I think we agree, the type of evidence, and it's specific about the type of evidence, like computers, photos of gang members, stats of money, things that people are understood to store at their residence, at their home. So if that's the evidence that we're looking for, doesn't it actually matter whether this is Cortez's home or whether he's just staying there, and whether the affidavit establishes the residence? I take your point, and at the end of the day, I don't think ultimately, even if that is required, I think it's satisfied in this case. I think I was just making the point that, from my understanding, there was a challenge to both requirements below, and the only one that's being made on appeal, as I understand it, is to the Nexus requirement. Just briefly on the issue about the video, under Frank's, the defendant needs to make a substantial preliminary showing to warrant a hearing, and this Court has said on numerous occasions that just conclusory statements doesn't get you over that bar. In this case, with respect to the fire, all the affidavit says, and you can see it, it's on page 52 of the joint effect, just as that based on a review of video, reviewed by investigators, Cortez set fire. Nothing is said about how he was identified from that video. The affidavit from counsel says, I've reviewed the video, I couldn't do it, and then he further represents that he asked the AUSA, and the AUSA said that the defendant was identified by clothing. Counsel doesn't dispute that statement. He doesn't go on to say, for example, I've reviewed the video, there was nothing distinctive that the defendant was wearing, under which that conclusion could be made. He also could have attached the video and said to the district court, take a look for yourself, there's no way that the defendant could be identified through clothing. And I think it's common knowledge, particularly with cameras everywhere, identifications are made sometimes by facial recognition, but sometimes they are made by the clothing a defendant has worn. And the district court, in denying the Franks hearing, I think my only dispute is, I don't think he found, he didn't need to find that the defendant was identified by clothing, he simply noted that the defense counsel had noted the government's representation regarding how the identification was made, and had not disputed it. And in those circumstances, he hadn't satisfied his substantial preliminary showing, and the district court certainly can't be said to have clearly erred in denying a Franks hearing in these circumstances. Can I ask you about the other factual challenge that counsel made? I understand your argument about the video, but what about the text messages? Because there it seems to me that is something that actually lawyers have some expertise in, which is looking at discovery and saying, the way I read the lawyer's affidavit below is, I looked at these text messages, and I just don't see a text message on April 28th that anyone could interpret to be about re-upping. So why is that not enough? I have two answers, Judge Rickleman. First, he doesn't say, at least as I read what he said in his affidavit, he doesn't say that I've read the text exchanges between the defendant and Mr. Cabral, and there were none on April 28th at all. He's simply saying, I read them differently from what is represented. And here again, I would say, defense counsel, he has that available to him. He can put that in front of the district court judge and say, Judge, here are the text messages. There's nothing in here that suggests that that which was set forth in the affidavit. And I know, I think my friend has overread what was said in the affidavit, because what was said was simply that based on a review of those communications, it supports that the defendant met with Cabral and quote-unquote re-upped the fentanyl, which was later found in the driveway. You're saying counsel misread Detective Ball's affidavit. I just think that if I understand the argument, it's either that there was a specific reference to re-upping, or that no text messages were exchanged between the defendant and Mr. Cabral on that date in question. That's not what the former isn't what Detective Ball said in his affidavit, and the latter isn't what defense counsel said in his affidavit. And even if I disagree with you on what defense counsel said, you're saying the problem is, why didn't defense counsel just attach copies of the text messages for the court to see it? Absolutely, because ultimately, otherwise you're simply, it's just the classic kind of swearing match. Here's an interpretation of potential drug jargon. An investigator trained in drug jargon has reached one conclusion. I've reached another. I think to get a Franks hearing, yes, you have to, given that he had access to those text messages, put it in front of the district court judge and say, take a look for yourself. There's nothing here that supports that statement. Thank you.